UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| MARY SALAZAR,<br>LIANA BRITT,<br>KIMBERLY<br>RYBARCZYK, AMANDA<br>BOARDMAN AND<br>VIRGINIA SMITH<br><br>         Plaintiffs,<br><br>v.<br><br>UNITED SUGAR PRODUCERS &<br>REFINERS COOPERATIVE F/K/A<br>UNITED SUGARS CORPORATION;<br>AMERICAN SUGAR REFINING, INC.;<br>ASR GROUP INTERNATIONAL, INC.;<br>DOMINO FOODS, INC.; CARGILL,<br>INC.; MICHIGAN SUGAR COMPANY;<br>COMMODITY INFORMATION, INC.;<br>AND RICHARD WISTISEN,<br><br>         Defendants. | Civil Action No.: 24-cv-1847<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiffs Mary Salazar, Liana Britt, Kimberly Rybarczyk, Amanda Boardman and Virginia Smith (collectively "Plaintiffs") bring this action on behalf of themselves and all others similarly situated to recover damages and obtain injunctive relief against Defendants for violations of (i) the antitrust laws of the United States, and (ii) the antitrust and consumer protection laws of the states set forth herein. Plaintiffs allege as follows based on personal knowledge as to themselves, and on information and belief as to all others:

## **INTRODUCTION**

1.      Defendants and their co-conspirators conspired and combined to fix, raise, maintain and stabilize prices for Granulated Sugar[1] sold throughout the United States since at least January 1, 2019.

2.      The Producing Defendants[2] are the largest producers and sellers of Granulated Sugar in the United States.

3.      In furtherance of this conspiracy, the Producing Defendants engaged in anticompetitive behavior by price signaling and exchanging, with each other and through Defendant Commodity Information, Inc. ("Commodity"),[3] competitively sensitive

---

[1] "Granulated Sugar" refers to the ordinary, white, table sugar that is made from either cane or beet sugar that has gone through a refining process to remove the molasses and extract the sucrose, creating relatively large uniform crystals. *See*, *e.g.*, *Sugar 101: Types of Sugar*, THE SUGAR ASSOC., https://www.sugar.org/sugar/types/ (last accessed on May 15, 2024).

[2] Defendants United Sugar Producers & Refiners f/k/a United Sugars Corporation ("United"), American Sugar Refining, Inc. ("ASR"), ASR Group International, Inc. ("ASR Group"), Domino Foods, Inc. ("Domino"), Cargill, Inc. ("Cargill"), and Michigan Sugar Company ("Michigan") are referred to, collectively, as the "Producing Defendants." ASR, ASR Group and Domino are referred to, collectively, as "ASR/Domino."

[3] Defendants Commodity Information, Inc. ("Commodity") and Richard Wistisen ("Wistisen"), are referred to, collectively, as "Commodity Defendants").

information related to pricing, production capacity, sales volume and demand with the intent and effect of increasing Granulated Sugar prices throughout the United States.

4.     For years, the Commodity Defendants have enabled and encouraged the Producing Defendants to exchange with each other detailed, non-public, competitively sensitive information regarding, among other things, prices (including prospective prices), capacity, sales volume, and demand.

5.     In doing so, the Commodity Defendants promote industry profits at the expense of competition. They do this by providing Producing Defendants with non-public insights into their competitors' production, costs, and pricing. The Commodity Defendants enable and encourage Producing Defendants to use this information to increase prices for purchasers, and thereby increase their own profits.

6.     As a direct result of Defendants' conspiracy, Granulated Sugar prices in the United States have been artificially inflated since at least 2019, causing Plaintiffs and Class Members to pay more for Granulated Sugar than they would have but for the conspiracy.

7.     On behalf of a proposed class of tens of millions of consumers nationwide, Plaintiffs bring this class action to put an end to Defendants' illegal scheme, to recover damages, and to restore competition in the Granulated Sugar marketplace.

**PARTIES**

*Plaintiffs*

8.     Plaintiff Mary Salazar is a citizen of Illinois residing in Marengo, Illinois. On numerous occasions throughout the Class Period, Plaintiff Salazar purchased Granulated

Sugar in the state of Illinois indirectly from the Defendants or their co-conspirators for her own personal use and not for resale and suffered antitrust injury as a result.

9.    Plaintiff Liana Britt is a citizen of Michigan residing in Saginaw, Michigan. On numerous occasions throughout the Class Period, Plaintiff Britt purchased Granulated Sugar in the state of Michigan indirectly from the Defendants or their co-conspirators for her own personal use and not for resale and suffered antitrust injury as a result.

10.    Plaintiff Kim Rybarczyk is a citizen of Michigan residing in Benton Harbor, Michigan and spending the winter months in Madeira Beach, Florida. On numerous occasions throughout the Class Period, Plaintiff Rybarczyk purchased Granulated Sugar indirectly from the Defendants or their co-conspirators in both Michigan and Florida for her own personal use and not for resale and suffered antitrust injury as a result.

11.    Plaintiff Amanda Boardman is a citizen of North Carolina residing in Hendersonville, North Carolina. On numerous occasions throughout the Class Period, Plaintiff Boardman purchased Granulated Sugar in the state of North Carolina indirectly from the Defendants or their co-conspirators for her own personal use and not for resale and suffered antitrust injury as a result.

12.    Plaintiff Virginia Smith is a citizen of Alabama residing in Valley, Alabama. On numerous occasions throughout the Class Period, Plaintiff Smith purchased Granulated Sugar in the state of Alabama indirectly from the Defendants or their co-conspirators for her own personal use and not for resale and suffered antitrust injury as a result.

*Defendants*

13.    Defendant United is a Minnesota corporation with its principal place of business in Edina, Minnesota. Four member-owners comprise United: United States Sugar Corporation ("U.S. Sugar"); American Crystal Sugar Company; Minn-Dak Farmers Cooperative; and Wyoming Sugar Company, LLC.[4] United sells Granulated Sugar primarily under the brand name "Crystal Sugar."[5] According to its website: "From a sugar-supply standpoint, we are the most reliable sugar producer in the U.S. due to our volume capabilities and coast-to-coast distribution network. Unlike other sugar suppliers, our sales team, customer service team and quality assurance team are solely focused on sugar, no other commodities."[6]

14.    Defendant ASR is a privately held Florida corporation with its principal place of business in West Palm Beach, Florida. It is a global producer and seller of Granulated Sugar.

15.    Defendant ASR Group is a privately held Florida corporation with its principal place of business in West Palm Beach, Florida. It is a global producer and seller of Granulated Sugar. Its website states: "As the world's largest refiner and marketer of cane sugar, we sell our branded products and service our customers in every key channel,

---

[4] *United's Members*, UNITEDSUGARPR.COM, https://unitedsugarpr.com/who-we-are/our-members/, (last accessed May 15, 2024).

[5] *Take Our Quality Sugar and Make it Your Own*, UNITEDSUGARPR.COM, https://unitedsugarpr.com/product-category/retail-products/, (last accessed May 15, 2024).

[6] *FAQs*, UNITEDSUGARPR.COM, https://unitedsugarpr.com/faq/, (last accessed Mar. 27, 2024).

including industrial, grocery and e-commerce, food service, and specialty."[7] ASR Group further claims: "Our acquisitions and strategic partnerships have positioned us as a key player in the world's largest sugar markets."[8]

16.     Defendant Domino is a Florida corporation with its principal place of business in West Palm Beach, Florida. Domino is the marketing and sales subsidiary of ASR and ASR Group's Granulated Sugar business and is a global producer and seller of Granulated Sugar.

17.     ASR/Domino owns and operates multiple sugar refineries throughout the United States, including in Cockett, California; Chalmette, Louisiana; Baltimore, Maryland and Yonkers, New York. ASR/Domino sells Granulated Sugar in the United States under the brands Domino, C&H, and Florida Crystals, as well as internationally under the brands Redpath, Tate & Lyle, Lyle's, and Sidul.[9]

18.     Defendant Cargill is a Delaware corporation with its principal place of business in Minnetonka, Minnesota. Cargill is a global producer and seller of Granulated Sugar. According to its website, "Cargill is proud to be one of the leading sugar marketers in North America. No matter what your sugar requirements – granulated sugar, refined sugar, liquid sucralose – Cargill has the right product to deliver the taste and texture you

---

[7] *Homepage*, ASR-GROUP.COM, https://www.asr-group.com/ (last accessed Mar. 27, 2024).

[8] *About Us,* ASR-GROUP.COM, https://www.asr-group.com/about-us/ (last accessed Mar. 27, 2024).

[9] *Who We Are*, ASR-GROUP.COM, https://www.asr-group.com/about-us/our-owners/ (last accessed Mar. 27, 2024).

demand."[10]

19.    Defendant Michigan Sugar is a Michigan corporation with its principal place of business in Bay City, Michigan. It is a cooperative made up of approximately nine hundred sugar beet grower-owners. It produces and sells Granulated Sugar globally under the brand names "Pioneer Sugar" and "Big Chief Sugar."[11] It also packages Granulated Sugar for over 2-dozen "private label brands for customers including Kroger, Walmart and Meijer."[12] It owns and operates sugar beet processing facilities in numerous Michigan cities including Bay City, Caro, Croswell, and Sebewaing. It owns warehouse facilities in Bay City and Carrolton, Michigan, as well as in Fremont and Findlay, Ohio. Michigan Sugar also has a production facility in Toledo, Ohio, and an agricultural research center in Bay County, Michigan.[13]

20.    Defendant Commodity is a Delaware corporation with its principal place of business in Orem, Utah. Commodity publishes a monthly report called the "Domestic Sugar Monthly Report" that contains information about, among other things, sugar supply and demand and sugar spot pricing guidance. Throughout the Class Period, Defendant

---

[10] *Sugar*, CARGILL.COM, https://www.cargill.com/food-beverage/na/sugar (last accessed Mar. 27, 2024).

[11] *About Us*, MICHIGANSUGAR.COM, https://www.michigansugar.com/about-us/, (last access Mar. 27, 2024).

[12] *Michigan Sugar Co. Written Statement to MI Legislature*, Feb. 20, 2019, *available at https://www.house.mi.gov/Document/?Path=2019_2020_session/committee/house/standing/agriculture/meetings/2019-02-20-1/documents/testimony/AGRI%20Testimony%20MI%20Sugar%20Co%20022019.pdf.*

[13]    *Facility Locations*, MICHIGANSUGAR.COM, https://www.michigansugar.com/about-us/locations/, (last access Mar. 27, 2024).

Commodity facilitated exchanges of detailed, non-public, competitively sensitive information regarding, among other things, prices (including prospective prices), capacity, sales volume, and demand among the Producing Defendants in furtherance of the conspiracy.

21.    Defendant Wistisen is a Granulated Sugar industry analyst and the principal of Commodity. Throughout the Class Period and in furtherance of Defendants' combination and conspiracy, Wistisen knowingly and purposely collected and shared detailed, non-public, competitively sensitive information with the Producing Defendants.

### AGENTS & CO-CONSPIRATORS

22.    Other persons and entities that are not named as defendants in this action knowingly participated as co-conspirators with Defendants in furtherance of the conspiracy.

23.    Defendants are jointly and severally liable for the acts of their co-conspirators, whether or not those co-conspirators are named as Defendants in this action.

24.    Each Defendant was a co-conspirator with each other Defendant. As such, each committed overt acts in furtherance of the conspiracy in the United States as well as within this district.

25.    The Defendants participated in the conspiracy through the various acts of their officers, directors, agents, partners, employees, representatives, affiliates, subsidiaries, and companies they acquired through mergers and acquisitions, for whom they are liable.

## FACTUAL ALLEGATIONS

### I.   The United States Granulated Sugar Market

26.   Granulated Sugar also known as "white sugar" or "table sugar," is a product made from cane sugar or beet sugar that has undergone a refining process to remove molasses and extract the sucrose ($C_{12}H_{22}O_{11}$), which is then ground into relatively large, uniform crystals typically of about 0.6mm. Although refined sugar is sometimes sold as a liquid or powder, Granulated Sugar is the predominant form of sugar and accounts for approximately 80% of all refined sugar sold in the United States.[14] Sugarcane can only be grown in tropical and semitropical climates such as Florida, Louisiana and Texas.[15] After sugarcane is harvested, it is converted into "raw" sugar at sugar mills, and then later refined into Granulated Sugar at refineries.[16]

---

[14] *See* Proposed Findings of Fact of the United States [Redacted], U.*S. v. United States Sugar Corp., et al.*, No. 21-cv-1644-MN (D. Del.) (ECF No. 219) ¶ 25.

[15]   *U.S.   Sugar   Production*,   USDA   ECONOMIC   RESEARCH   SERVICE, https://www.ers.usda.gov/topics/crops/sugar-and-sweeteners/background/ (last accessed Mar. 28, 2024).

[16] Rhonda Ferree, *Sugar – Is It Sugarcane or Sugar Beets*, UNIV. OF ILL. EXTENSION, (Dec. 17, 2017),   https://extension.illinois.edu/blogs/ilriverhort/2017-12-07-sugar-it-sugarcane-or-sugar-beets.

**Figure 1: Where Is Sugar Produced?**[17]



27.  Sugar beets are grown in a variety of states across the United States, including California, Colorado, Idaho, Michigan, Minnesota, Montana, Nebraska, North Dakota, Oregon, Washington, and Wyoming[18] and are typically processed in a single facility where they are converted into refined sugar.[19]

---

[17] *Where Does Sugar Come From?*, SUGAR.ORG, https://www.sugar.org/sugar/farm-to-table/ (last accessed Mar. 29, 2024).

[18] *U.S. Sugar Production*, USDA ECONOMIC RESEARCH SERVICE, https://www.ers.usda.gov/topics/crops/sugar-and-sweeteners/background/ (last accessed Mar. 28, 2024).

[19] Rhonda Ferree, *Sugar – Is It Sugarcane or Sugar Beets*, UNIV. OF ILL. EXTENSION, (Dec. 17, 2017), https://extension.illinois.edu/blogs/ilriverhort/2017-12-07-sugar-it-sugarcane-or-sugar-beets.

28.    Granulated Sugar produced from sugar cane and Granulated Sugar made from beets are chemically indistinguishable.[20]

**Figure 2: Sugar Beet Processing vs. Sugarcane Refining**[21]



29.    Granulated Sugar is a staple commonly used by both commercial users (*e.g.*, restaurants, bakeries, confectioneries, and food and beverage manufacturers) and end-user consumers as an ingredient to sweeten foods and drinks. It is also used in some industrial processes, such as the production of medications and bioplastics, and to make ethanol and other biofuels.

---

[20] Robert M. Harveson, *History of Sugarbeets*, Crop Watch, https://cropwatch.unl.edu/history-sugarbeets#:~:text=During%20the%20mid%2D1700's%2C%20the,from%20that%20produced%20from%20cane. (last accessed Mar. 28, 2024).

[21] Muhammad Ishfaq, *Sugar Beet Cultivation in the Tropics and Subtropics: Challenges and Opportunities*, https://www.researchgate.net/figure/Sugar-beet-processing-and-sugarcane-refining-steps-for-sugar-production-in-an-industry_fig3_370247340, (last accessed Mar. 29, 2024).

30.     While some larger commercial users purchase Granulated Sugar directly from the Producing Defendants either for resale or for manufacturing purposes (*i.e.*, "Direct Purchasers"), many commercial entities purchase Granulated Sugar indirectly through intermediaries such as sugar wholesale distributors, food service distributors, or grocery retailers. In addition, consumer end-users purchase Granulated Sugar indirectly, typically through retailers. These latter types of purchasers, which includes Plaintiffs, are referred to herein as "Consumer Indirect Purchasers."

31.     Granulated Sugar is a commodity product with little or no product differentiation based on processor. Given its history and cultural importance, it is generally considered one of the most valuable agricultural commodities in the world.[22]

32.     Sugar futures contracts are traded on the Intercontinental Exchange ("ICE") as "White Sugar" under the symbol "W." According to ICE: "The White Sugar futures contract is used as the global benchmark for the pricing of physical white sugar. It is actively traded by the international sugar trade, sugar millers, refiners, and end-users (manufacturers) as well as by managed funds and both institutional and short-term investors."[23]

33.     The Granulated Sugar industry in is projected to reach an estimated $13.5 billion in revenue in the United States in 2024.[24]

---

[22]   *Sugarcane Profile*, AG. MARKETING RESOURCE CENTER, (Apr. 2022), https://www.agmrc.org/commodities-products/grains-oilseeds/sugarcane-profile, (last accessed Mar. 29, 2024).

[23]   *White Sugar Futures*, ICE FUTURES EUR., https://www.ice.com/products/37089080/White-Sugar-Futures (Mar. 28, 2024).

[24]   *Sugar Processing in the US – Market Size, Analysis, Trends and Forecasts*, IBIS WORLD, (Feb.

34.     Throughout the Class Period, the Producing Defendants, directly or through their subsidiaries or other affiliates, sold Granulated Sugar throughout the United States in a continuous and uninterrupted flow of interstate commerce, including through, in, into, or from this District.

35.     During the Class Period, the Producing Defendants collectively controlled a dominant share of the United States Granulated Sugar market. Presently, the Producing Defendants have an estimated combined market share of at least 68% in the United States Granulated Sugar market.[25] Upon hearing the announcement regarding United's acquisition of Imperial, one Producing Defendant noted that "they view this as 1 less competitor and now 3 companies account for 75% of the market."[26]

## II.     Prior Collusion in the Sugar Industry

36.     The producers of domestic refined sugar have been found liable for antitrust violations at least three times over the past eighty years, including for engaging in conduct similar to that alleged herein.

37.     In 1936, the United States Supreme Court upheld a lower court ruling that the major refined sugar producers unreasonably restrained trade by, among other things,

---

[25] *See* Defendant United's Proposed Findings of Fact, U.*S. v. United States Sugar Corp., et al*., No. 21-cv-1644-MN (D. Del.) (ECF No. 231) ¶177.

[26] Email from ASR/Domino's Adam Whittaker dated 3/25/21, *U.S. v. United States Sugar Corp., et al*., No. 21-cv-1644-MN (D. Del.) (ECF Nos. 207-24).

2024),        https://www.ibisworld.com/united-states/market-research-reports/sugar-processing-industry/ (last accessed Mar. 28, 2024).

creating an industry trade association called the "Sugar Institute." The Sugar Institute enabled a scheme whereby "defendants agreed to sell, and in general did sell sugar only upon open prices, terms and conditions publicly announced in advance of sales, and they agreed to adhere and in general did adhere without deviation, to such prices, terms and conditions until they publicly announced changes."[27]

38.     Twelve years later, sugar producers in California were accused of conspiring to fix the prices they paid to acquire sugar beets from growers. The Court found in favor of the Plaintiffs after a trial on the merits and awarded them treble damages and attorneys' fees. This ruling was upheld by the Ninth Circuit Court of Appeals.[28]

39.     More recently, in 1978, sugar producers—again standing accused of anticompetitive conduct— entered into a consent decree with the United States Department of Justice ("DOJ") which enjoined them from, among other things, entering into any future agreements or combinations: "to [f]ix, raise, maintain or stabilize the prices, terms or conditions for the sale of refined sugar"; "to [g]ive any prior notice of or announce in advance any change or contemplated change in prices, terms or conditions for the sale of refined sugar"; "from [d]irectly communicating to any other refiner information concerning Future Prices"; or "from [r]equesting, requiring or coercing any third person….to communicate to any other refiner, information concerning Future Prices."[29]

---

[27] *United States v. Sugar Institute*, 297 U.S. 553, 582-83 (1936).

[28] *Am. Crystal Sugar Co. v. Mandeville Island Farms*, 195 F.2d 622, 626 (9th Cir. 1952).

[29] *United States v. Great W. Sugar Co.*, No. 74-2674 SW, 1978 WL 1399, at *2 (N.D. Cal. Sept. 13, 1978).

40.     The DOJ's and Federal Trade Commission's ("FTC") joint "Guidelines for Collaborations Among Competitors"[30] and the FTC's "Merger Guidelines"[31] specifically identify "Prior Actual or Attempted Attempts to Coordinate" as a "Primary Factor" in determining whether practices such as information sharing are likely to increase the risk of anticompetitive conduct.

## III.   Defendants Have Knowingly Participated in a Continuing Conspiracy to Artificially Raise, Fix, Maintain, or Stabilize Granulated Sugar Prices.

41.     Like their sugar industry brethren of the past, the Producing Defendants have knowingly participated in a conspiracy to restrain trade by artificially raising, fixing, stabilizing, or maintaining Granulated Sugar prices in the United States since at least 2019. To effectuate their agreement or understanding to restrain trade, the Producing Defendants engaged in price signaling and exchanged detailed, accurate, non-public, competitively sensitive information (including forward-looking price information), both directly and through the Commodity Defendants.

42.     Producing Defendants have exchanged competitively sensitive information for years.[32] There is no economically rational reason for the Producing Defendants to share

---

[30] *Antitrust Guidelines for Collaborations Among Competitors,* FED. TRADE COMM. & U.S. DEPT. OF JUSTICE, (Apr. 2000), https://www.ftc.gov/sites/default/files/documents/public_events/joint-venture-hearings-antitrust-guidelines-collaboration-among-competitors/ftcdojguidelines-2.pdf (last accessed Mar. 29, 2024).

[31] *Merger Guidelines,* FED. TRADE COMM. & U.S. DEPT. OF JUSTICE, (Dec. 18, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/2023_merger_guidelines_final_12.18.2023.pdf.

[32] *See* Proposed Findings of Fact of the United States [Redacted], U*.S. v. United States Sugar Corp., et al*., No. 21-cv-1644-MN (D. Del.) (ECF No. 219) ¶¶ 140-51.

competitively sensitive information with their competitors. Instead, Producing Defendants did so for the explicit purpose of carrying out their unlawful scheme and to avoid competition on the merits.

43.    Defendant Commodity purports to offer analysis of the sugar industry, yet it has no public presence: it does not advertise its services to the public, it does not have a website, and it does not appear to market its "Domestic Sugar Monthly Report" or other analyses to anyone but a select few (*i.e.*, the Producing Defendants or other refiners who share their competitively sensitive information). Notably, these reports are not made available to the Producing Defendants' customers or consumers, thereby giving the Producing Defendants an unfair competitive advantage over other market participants.

44.    The information the Commodity Defendants gather includes the Producing Defendants' current pricing, future or forward pricing, pricing strategies, copy size/yields, sold positions, spot prices, and contract prices. This information is not obtained through anonymous surveys or polling, and the information the Commodity Defendants share with the Producing Defendants is not aggregated. Instead, the Producing Defendants each regularly share competitively sensitive information regarding pricing and sold positions with the Commodity Defendants, who then immediately share that non-aggregated, non-anonymized competitively sensitive information with the other Producing Defendants. These reciprocal exchanges occur rapidly, often within hours of receipt, and the information is used by the Producing Defendants in deciding how much to charge for their Granulated Sugar.

45.    Moreover, the Producing Defendants are aware that sharing competitively sensitive non-public information violates the antitrust laws. As discussed below, the Producing Defendants' codes of conduct explicitly acknowledge that agreements to fix prices are unlawful and that information regarding prices and sales should not be shared, directly or indirectly, with competitors. But that is precisely what the Producing Defendants have done.

46.    Producing Defendants realized that sharing competitively sensitive information among themselves would hinder sugar purchasers' ability to negotiate prices. For example, in an April 18, 2022, deposition, United's Executive VP of Sales Dick Swart testified that although customers use other suppliers' pricing information to negotiate down prices with United, these "destructive situations" could be better avoided if United had better information about prices competitors were actually charging.

47.    The Producing Defendants' purpose and goal is clear: to avoid competing with one another by ensuring they do not undercut each other's prices, thus maintaining Granulated Sugar prices at prices higher than they otherwise would be in a competitive market. As the dominant producers in the sugar industry that account for the majority of Granulated Sugar production and sales in the United States, the Producing Defendants are not competitively restrained by smaller market participants.

48.    In furtherance of their unlawful agreement or understanding to restrain trade, the Producing Defendants, y exchanged competitively sensitive information with one another and through Commodity when deciding how much to charge their customers for Granulated Sugar during the Class Period. Each of the Producing Defendants participated

in such exchanges of competitively sensitive information to implement their conspiracy to

fix Granulated Sugar prices:

(a) <u>United & ASR/Domino</u>: September 21, 2020 – Mr. Wistisen emailed United's Mr. Speece and ASR/Domino's Mr. Henderson within minutes of each other, asking them about their current prices and if there was "anything new of interest on the pricing front?" Both competitors quickly responded and reported their prices and sold positions, and Mr. Wistisen shared each respective competitor's response with the other.

(b) <u>United & ASR/Domino</u>: November 16, 2020 – Mr. Wistisen contacted United's Eric Speece and asked, "Where would you put spot and forward beet prices?" Approximately 38 minutes later, Mr. Wistisen asked Domino's Alan Henderson, "Where would you put prices and cane coverage?" Both Mr. Speece and Mr. Henderson responded that same day with pricing information.

(c) <u>Cargill</u>: May 26, 2021 - Mr. Sproull of Domino testified during the *United States v. U.S. Sugar Corp.* trial that he received an email from ASR/Domino's Mr. Henderson discussing Cargill pricing information that originated from "Rich Wistisen," "the sugar industry analyst."

Sept. 21, 2020 – Mr. Speece of United testified during the *United States v. U.S. Sugar Corp.* trial that he had email correspondence with Mr. Wistisen where Mr. Wistisen passed "along information about how much business Cargill has booked for the 2021 fiscal year."

(d) <u>Michigan Sugar</u>: In an email on September 21, 2020, Mr. Wistisen reached out to United's Mr. Speece asking: "Anything new of interest on the pricing front? Hearing beets well sold, except possible NSM (80-85%), and prices firm to higher. Michigan $38.5+…. ."[33] The next day, Mr. Wistisen wrote, "Waiting for confirm from Michigan," which Mr. Speece testified he understood to mean that "he's waiting to confirm how sold they are."

---

[33] *U.S. v. United States Sugar Corp., et al.*, No. 21-cv-1644-MN (D. Del.) (ECF 227), Trial Tr. 465 at 23-25.

49.    The information exchanges between the Producing Defendants and the Commodity Defendants were specifically coordinated such that the Producing Defendants would timely receive each other's information:

(a)    September 21, 2020 – Mr. Wistisen emailed United's Mr. Speece and ASR's Mr. Henderson within minutes of each other, asking them about their current prices and if they will be "firm to higher." Within a day, both competitors had reported their prices and sold positions, and Mr. Wistisen communicated each respective competitor's report to the other. He also stated: "Waiting to confirm from Michigan [Sugar]."

(b)    November 17, 2020 – The day after the November 16, 2020 emails referenced above, Mr. Wistisen emailed United's Mr. Speece and relayed the specific pricing information that Domino's Mr. Henderson shared with him the day prior: "ASR saying prices keep climbing: $46 spot all locations….Waiting to hear back from most contacts… ." Mr. Wistisen also emailed Mr. Henderson that same day and forwarded the pricing information shared by Mr. Speece.

50.    The pricing information Producing Defendants exchanged with each other included not only current prices, but prospective prices and sold positions:

(a)    March 2020 – After attending the International Sweetener Colloquium the week before in Palm Springs, California, ASR/Domino's Mr. Henderson reported back to his colleagues, among other things, their competitors' pricing plans for Fiscal Year 2021.

(b)    September 21, 2020 – Mr. Wistisen reported to ASR/Domino's Mr. Henderson: "Hearing beets well sold, except possibly NSM 80 to 85 percent and prices firm to higher. Michigan $38.50 plus selective selling…."

(c)    February 17, 2021 – Mr. Wistisen exchanged emails with ASR/Domino's Mr. Henderson about United's prospective pricing strategy, and Mr. Wistisen responded: "Long conversation with United: won't set FY22 price list until March, but the plan remains to hold steady at $36.50 and $38.50 based

on demand."

(d) February 15, 2021 – ASR/Domino's Mr. Henderson emailed Mr. Wistisen and reported: "We [Domino] are still at $36.50 and $38.50 with zero problems selling at those values. I do not anticipate any changes to our prices…."

(e) May 18, 2021 – Mr. Wistisen informed ASR/Domino's Mr. Henderson about United's pricing "… expect big action over the next month, 20+% add to bookings, and at that time expect to raise prices, and not by just a dollar."

51. Producing Defendants knew that the competitively sensitive information they received through the Commodity Defendants was accurate and they could rely on it:

(a) February 17, 2021, Domino's Mr. Henderson wrote his colleague, Mr. Whittaker, forwarding information about competitor United received by Mr. Wistisen, noting, "United is usually pretty upfront with Rich."

52. Furthermore, these information exchanges were expressly and intentionally used for price fixing:

(a) September 2019 – Defendant United's CEO stated that United "tried to push prices higher" by putting an expiration date on pending offers, which he further explained sent a message to "competitors that we were not interested in allowing the market to slip lower." Similar documents unveiled by the DOJ further reveal a Domino executive stating, "[w]e need to signal to the market that we're going to maintain price," one executive stating that the "main downside" to lowering an Imperial bid "would be snatching something from United just as they are starting to show some upside price movement."

(b) January 8, 2020 – ASR's Rob Sproull emailed his colleague Alan Henderson stating: "I think it's really important we signal to the market that there's still going to be tightness….We need to signal to the market that we're going to maintain price, especially for the Oct - Dec quarter."

(c) June 18, 2020 – ASR Group's Alan Henderson emailed his colleague, Adam Whittaker regarding a quote needed for major customer Piedmont Candy Corporation, where he stated he "would love to get aggressive here [on pricing]" but that "[w]e would like to avoid sending a signal out to competitors that we are chasing business and lowering price off the standard $41.00 bulk basis."

(d) November 16, 2020 – United's Mr. Swart emailed his colleague Mr. Speece, stating that he wanted Mr. Wistisen to "hear" that United's current beet sugar price was $36.50 and cane sugar price was $38 but United was contemplating increasing its prices given its sold position.

(e) January 20, 2021 – United's Eric Speece emailed his colleague at United, Dirk Swart, that one competitor was selling at too low a price and suggested, "May want to communicate pricing earlier than the colloquium to send a msg."

53.    The Producing Defendants were careful to avoid detection of their unlawful scheme. For example, in an email from United's Eric Speece discussing exchanging information with a competitor, Mr. Speece stated a preference for a phone call rather than putting anything in writing.

54.    The surreptitious exchanges of competitively sensitive non-public information through a third-party data aggregator recently caught the attention of antitrust enforcers. In September 2023, the DOJ sued Agri Stats for engaging in a scheme similar to that alleged herein: for suppressing competition by organizing and managing a scheme to share competitively sensitive information among protein processors.[34]

---

[34] *See United States v. Agri Stats*, Case No. 0:23-cv-03009, ECF No. 1 (D. Minn.).

55.    According to the DOJ, Agri Stats organized and managed "anticompetitive information exchanges" among various protein processors.[35] This conduct, the DOJ alleged, harms both grocery stores and consumers by allowing "competitor" processors to use each other's competitively sensitive information to set prices and output levels. In addition, because "Agri Stats withholds its reports from meat purchasers, workers and American consumers," the resulting "information asymmetry" compounds the harm of Agri Stats' information exchanges.[36]

56.    A year earlier, in July 2022, the DOJ filed "a civil antitrust lawsuit … against a data consulting firm and its president, as well as three poultry processors, to end a long-running conspiracy to exchange information about wages and benefits…"[37] This lawsuit challenged a similar scheme whereby processors used a third-party intermediary to exchange competitively sensitive information related to wages and benefits, which "stifled competition and harmed a generation of plant workers who face demanding and sometimes dangerous conditions to earn a living."[38]

---

[35] *Id.*

[36] *Justice Department Sues Agri Stats for Operating Extensive Information Exchanges Among Meat Processors*, DEPT. OF JUSTICE, (Sept. 28, 2023), https://www.justice.gov/opa/pr/justice-department-sues-agri-stats-operating-extensive-information-exchanges-among-meat.

[37] *See United States v. Cargill, et al.*, Case No. 1:22-cv-01821-ELH, ECF No. 1 (D. Md.). *See also Justice Department Files Lawsuit and Proposed Consent Decrees to End Long-Running Conspiracy to Suppress Worker Pay at Poultry Processing Plants and Address Deceptive Abuses Against Poultry Growers*, DEPT. OF JUSTICE, (July 25, 2022), https://www.justice.gov/opa/pr/justice-department-files-lawsuit-and-proposed-consent-decrees-end-long-running-conspiracy.

[38] *See United States v. Cargill, et al.*, Case No. 1:22-cv-01821-ELH, ECF No. 1 (D. Md.). *See also Justice Department Files Lawsuit and Proposed Consent Decrees to End Long-Running Conspiracy to Suppress Worker Pay at Poultry Processing Plants and Address Deceptive Abuses Against Poultry Growers*, DEPT. OF JUSTICE, (July 25, 2022),

## IV.    The Structure and Characteristics of the Granulated Sugar Market Make it Susceptible to Collusion

### A.    High Barriers to Entry

57.    The Granulated Sugar market is wrought with high barriers to entry which make it prohibitively difficult for new producers to enter. A new entrant into the market would face costly and lengthy start-up costs, including large capital investments associated with constructing processing plants, refiners, transportation infrastructure, hiring skilled labor, creation of sugarcane/sugar beet farms or securing contracts with sugarcane/sugar beet farmers, and regulatory approvals. In addition, most existing competitors, like the Producing Defendants, are large, vertically integrated operations that not only have long-standing customer and supplier relationships, but also benefit from economies of scale and access to loans and production allotments offered by the USDA only to the larger, vertically integrated producers.

### B.    The Commodity Nature of Granulated Sugar

58.    Granulated Sugar is a standardized, homogenous commodity product with little or no product differentiation based on producer. When different suppliers in an industry offer similar products, customers are less likely to choose a vendor based on product characterizations and are more likely to choose on the basis of price. As such, in commodity markets, it is easier for competing firms, such as the Producing Defendants, to

---

https://www.justice.gov/opa/pr/justice-department-files-lawsuit-and-proposed-consent-decrees-end-long-running-conspiracy.

reach an agreement on a common price structure because their products are fungible and have common features and qualities.

59.    Since Granulated Sugar is a commodity product lacking any meaningful substitutes, the market for Granulated Sugar in the United States is characterized by inelastic demand. Thus, the Producing Defendants know they could demand higher prices when Granulated Sugar supplies are low without the fear of consumers switching to another product.

### C.    The Granulated Sugar Market is Highly Concentrated and Dominated by Producing Defendants

60.    The market for Granulated Sugar in the United States is highly concentrated by a few producers. First, the Producing Defendants collectively hold a dominant share of the market during the Class Period.[39] Second, the market became even more concentrated in 2022 when United acquired Imperial, a corporate merger Senators Elizabeth Warren and Cory Booker recognized would "likely" increase sugar prices.[40] Finally, "competitors" United and ASR (through its subsidiary Domino) have related ownership interests: United member U.S. Sugar has a partial ownership interest in Sugar Cane Growers Cooperative, which is a part owner of Domino.[41]

---

[39] Diane Bartz and Jonathan Stempel, *Appeals Court Will Not Undo US Sugar-Imperial Sugar Merger*, REUTERS, (July 13, 2023), https://www.reuters.com/legal/litigation/court-rejects-us-government-bid-block-us-sugar-purchase-imperial-sugar-2023-07-13/.

[40] Letter from Elizabeth Warren and Cory Booker, U.S. Senators, to Thomas Vilsack, Sec'y U.S. DEPT.        OF        AG.        (Nov.        14,        2022), https://www.warren.senate.gov/imo/media/doc/2022.11.14%20Letter%20to%20USDA%20re%20Sugar%20Merger.pdf.

[41] "United and Domino have connected ownership interests that further raises the risk of coordination." Proposed Findings of Fact of the United States [Redacted], U.*S. v. United States*

61.    President Biden has repeatedly clamored against the historic levels of economic concentration across the United States, describing it as "troubling" while vowing to "be the first president in four decades to reverse this trend."[42]

62.    Highlighting the heightened scrutiny of anticompetitive behavior in the United States in recent years, the Biden Administration launched "a new Strike Force to crack down on unfair and illegal pricing" in March 2024.[43] Among other objectives, the Strike Force aims to promote "competition in food and grocery markets." The task force will be jointly led by the FTC and the DOJ.

63.    This Strike Force follows nearly four years of consistently increasing antitrust enforcement efforts by the Biden Administration, including challenging U.S Sugar's acquisition of Imperial. At the time of that challenge, Assistant Attorney General for the Antitrust Division of the DOJ, Jonathan Kanter, argued that "[f]urther consolidation in the market for this important kitchen staple (sugar) will have real-world consequences for millions of Americans."[44]

---

*Sugar Corp., et al.*, No. 21-cv-1644-MN (D. Del.) (ECF No. 219) ¶ 135.

[42] Eric Cortellessa, *How a USDA Analyst Helped Stymie the Biden Administration's Bid to Block a Sugar Merger*, Time, (Sept. 28, 2022), https://time.com/6218111/biden-sugar-merger-usda-analyst/.

[43] *President Biden Announces New Actions to Lower Costs for Americans by Fighting Corporate Rip-Offs*, The White House, (Mar. 5, 2024), https://www.whitehouse.gov/briefing-room/statements-releases/2024/03/05/fact-sheet-president-biden-announces-new-actions-to-lower-costs-for-americans-by-fighting-corporate-rip-offs/.

[44] Eric Cortellessa, *How a USDA Analyst Helped Stymie the Biden Administration's Bid to Block a Sugar Merger*, Time, (Sept. 28, 2022), https://time.com/6218111/biden-sugar-merger-usda-analyst/.

### D.    The Producing Defendants Are Highly Vertically Integrated

64.    The domestic sugar industry is almost entirely vertically integrated, with the Producing Defendants and other sugar producers owning or tightly controlling almost all aspects of producing, processing, and refining sugarcane and sugar beets into Granulated Sugar, and marketing and selling Granulated Sugar.

### E.    USDA's Sugar Program Benefits Sugar Producers

65.    The Producing Defendants benefited from the United States Department of Agriculture's ("USDA") Sugar Program, which—although it did not set, approve, or otherwise regulate actual sales prices for Granulated Sugar—limited the number of sources of raw sugar from which Granulated Sugar could be refined and protected the Producing Defendants from foreign competition by limiting imports. As a result of this program, the Producing Defendants know they can charge higher prices for Granulated Sugar as their sold positions increase because there will be little to no additional competitive product available in the market to constrain them.[45]

66.    According to the American Enterprise Institute, the U.S. Sugar Program costs consumers anywhere between $2 and $4 billion a year. That same report found that for

---

[45] *See, e.g.*, *SUGAR PROGRAM: Alternative Methods for Implementing Import Restrictions Could Increase Effectiveness*, GOV. ACCOUNTABILITY OFF., (Oct. 2023), https://www.gao.gov/assets/d24106144.pdf; *See also, e.g.*, Shannon Anderson, *The Domestic Causes and International Consequences of the U.S. Government's Sugar Price Support Programs*, PEPPERDINE SCHOOL OF PUBLIC POLICY, https://publicpolicy.pepperdine.edu/academics/research/policy-review/2009v2/sugar-price-support-programs.htm (last accessed May 12, 2024).

2021, "domestic sugar prices have been hovering around twice the level of world prices."[46] It went on to describe the U.S. Sugar program as a "protectionist scheme" that "transfers income to sugar growers and refineries by imposing higher costs on all food processors that use sugar and over 300 million consumers…"[47]

67.    Because of the hyper concentration within the sugar industry, the U.S. Sugar program's import restrictions serve to further protect Producing Defendants. For example, the Fanjul brothers who own Defendant ASR, also own sugar production operations in the Dominican Republic. The Dominican Republic is one of the top exporters of sugar to the United States and nearly two-thirds U.S. Sugar program's quota is allocated to the Fanjul family.[48]

### F.    Opportunities to Collude

68.    Each Producing Defendant was a member of, and participated in, either directly or through one of their its companies, various trade associations including the Sugar Association[49] and the American Sugar Alliance.[50] These trade associations provided Defendants with ample opportunities to collude during the Class Period.

---

[46] John Beghin, *Recapping the Effects of the US Sugar Program*, AM. ENTERPRISE INST., Fen. 2022, *available at* https://www.aei.org/wp-content/uploads/2022/01/Recapping-the-Effects-of-the-US-Sugar-Program.pdf?x85095.

[47] *Id.*

[48] Guy Rolnik, *Meet the Sugar Barons Who Used Both Sides of American Politics to Get Billions in Subsidies*, PROMARKET.COM, (Sept. 19, 2016), https://www.promarket.org/2016/09/19/sugar-industry-buys-academia-politicians/.

[49] *Members*, SUGAR.ORG, https://www.sugar.org/about/members/ (last accessed Mar. 29, 2024).

[50] *Members and Executive Committee*, AMERICAN SUGAR ALLIANCE, https://sugaralliance.org/members-and-executive-committee (last accessed Mar. 29, 2024).

69.     For example, the American Sugar Alliance holds an annual symposium sponsored and attended by the Producing Defendants where attendees not only participated in industry discussion, but also engaged informal, social activities such as golf outings.[51]

70.     The current Board of the Sugar Association is teeming with employees of Producing Defendants: American Sugar Refining, Inc. (four board members), Michigan Sugar Company (one member), United (one member) all are represented.[52]

71.     In addition to attending industry meetings together, key personnel who work for different Producing Defendants are close personal friends and certain key players have worked for more than one Defendant during their careers. For example, Eric Speece, currently the Director of Strategic Accounts at United, has known Defendant Wistisen from when Mr. Speece previously worked at Cargill.[53]

## V.     Defendants' Conspiracy Caused Artificially Inflated Sugar Prices During the Class Period

72.     During the Class Period, the price of Granulated Sugar rose in a manner not reflective of prior pricing patterns even though supply did not decline. Figure 3 below shows Granulated Sugar prices rising steadily during the Class Period.

---

[51] *Symposium*, AMERICAN SUGAR ALLIANCE, https://sugaralliance.org/symposium (last accessed Mar. 29, 2024).

[52] *Board Members*, SUGAR.ORG, https://www.sugar.org/about/board/ (last accessed May 12, 2024).

[53] *U.S. v. United States Sugar Corp., et al.*, No. 21-cv-1644-MN (D. Del.) (ECF No. 227), Trial Tr. 464: 13-18.

**Figure 3: 2014-2024 Sugar Manufacturing Price Index[54]**



73.    Of note, after United's acquisition of Imperial in 2023, the Producer Price Index for sugar further increased from 110.6 to 123.2 by the end of 2023.

74.    As shown in Figure 4 below, the spot price for sugar also has also risen during the Class Period in a manner inconsistent with previous pricing patterns behavior.

---

[54]    *Consumer Price Index By Industry*, FED. RES. ST. LOUIS, https://fred.stlouisfed.org/series/PCU3113131131# (last accessed Mar. 29, 2024).

**Figure 4: U.S. Sugar Prices[55]**



75.    As these charts show, the prices for Granulated Sugar increased significantly,

shortly after the alleged conspiracy began in or around January 2019.

## ANTITRUST INJURY & DAMAGES

76.    Defendants' anticompetitive conduct had the following effects, among

others:

---

[55] *Sugar Prices – 37 Year Historical Chart*, MACROTRENDS.COM, https://www.macrotrends.net/2537/sugar-prices-historical-chart-data (last accessed Mar. 29, 2024).

A)    Price competition has been restrained or eliminated with respect to Granulated Sugar;

B)    The price of Granulated Sugar has been fixed, raised, stabilized, or maintained at artificially, supracompetitive levels;

C)    Indirect purchasers of Granulated Sugar have been deprived of free and open competition; and

D)    Indirect purchasers of Granulated Sugar paid artificially inflated prices.

77.    The purpose of the conspiracy was to raise, fix, or maintain the price of Granulated Sugar. As a direct and foreseeable result, Plaintiffs and the Class Members paid supra-competitive prices for Granulated Sugar during the Class Period.

78.    By reason of the alleged violations of the antitrust laws, Plaintiffs and Class Members have sustained injury to their businesses or property by paying higher prices for Granulated Sugar than they would have paid in the absence of Defendants' illegal conspiracy.

79.    These overcharges caused by Defendants' conspiracy are the type of injury the antitrust laws were intended to prevent.

80.    The overcharges caused by Defendants' anticompetitive conduct can be traced down the chain of distribution from the Producing Defendants to Plaintiffs and Class Members. An overcharge at the top of a multi-level distribution chain will result in higher prices at every level of distribution below. Therefore, all or at least a measurable portion of the anticompetitive overcharge will be passed on to end users.

81.     Commonly used and well-accepted econometric models can be specified to measure both the extent and amount of overcharges passed through the various levels of distribution to end users. As a result, the economic harm to Plaintiffs and class members can be measured using evidence common to the Class Members.

## JURISDICTION AND VENUE

82.     This action arises under Section 1 of the Sherman Act (15 U.S.C. § 1), and Section 16 of the Clayton Act (15 U.S.C. § 26). Plaintiffs' Sherman Act claim seeks injunctive relief, costs of suit, and reasonable attorney's fees, and the state law claims seek injunctive relief, damages, costs of suit, and reasonable attorneys' fees.

83.     This Court has subject matter jurisdiction pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331, 1333(d), 1337(a), and 1367.

84.     This Court has personal jurisdiction over all Defendants pursuant to Section 12 of the Clayton Act, 15. U.S.C. § 22 and 28 U.S.C. § 1391. Venue is proper because Defendants reside, transact business, and can be found in this District.

85.     Defendants' unlawful, anticompetitive conduct substantially affected interstate commerce throughout the United States, causing injury to Plaintiffs and the geographically dispersed Class Members.

## CLASS ACTION ALLEGATIONS

86.     Plaintiffs bring this action individually and as a class action under Federal Rules of Civil Procedure 23(a), (b)(1) and (b)(2) as representatives of a class of consumer indirect purchasers seeking injunctive relief (the "Nationwide Class") defined as follows:

> All consumers who purchased Granulated Sugar for personal use and not for resale in the United States from January 1, 2019, until the Defendants' unlawful conduct and its anticompetitive effects cease.

87.     In addition, Plaintiffs bring this action individually and as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) as representatives of a class of consumer indirect purchasers seeking damages and equitable relief on behalf of the following class (the "State Law Class"):

> All consumers who purchased Granulated Sugar for personal use and not for resale in Alabama, Arizona, California, Colorado, Connecticut, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, and/or Vermont during the Class Period from January 1, 2019, until the Defendants' unlawful conduct and its anticompetitive effects cease.

88.     Excluded from the Nationwide Class and the State Law Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action. Plaintiffs reserve the right to modify these class definitions and/or to propose subclasses, as appropriate, based on further investigation and discovery.

89.     ***Numerosity***. The members of the Nationwide Class and the State Law Class are so numerous as to render their individual joinder impracticable. Although the precise number of Nationwide Class and the State Law Class members is unknown, based upon information and belief, Plaintiffs allege that the Nationwide Class and the State Law Class contain millions of members geographically dispersed throughout the United States.

90.     ***Commonality and Predominance.*** Common questions of law and fact exist as to all members of the Nationwide Class and the State Law Class, and such questions predominate over any question affecting only individual members of the Nationwide Class and the State Law Class. The common legal and factual questions, each of which also may be certified under Rule 23(c)(4), include but are not limited to the following:

(a)  Whether Defendants and their co-conspirators engaged in a conspiracy to restrain trade by fixing, raising, maintaining, or stabilizing prices of Granulated Sugar, in the United States;

(b)  The duration of the conspiracy alleged herein and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

(c)  Whether the alleged conspiracy violated antitrust laws, unfair competition laws and/or consumer protection laws;

(d)  Whether the conduct of Defendants and their co-conspirators caused Plaintiffs and members of Nationwide Class and the State Law Class to suffer injury;

(e)  Whether the conduct of Defendants and their co-conspirators caused the prices for Granulated Sugar sold in the United States to be higher than they would have been in a competitive market;

(f)  Whether Plaintiffs and members of the Nationwide Class and the State Law Class are entitled to, among other things, injunctive relief and if so, the nature and extent of such injunctive relief;

(g) Whether Defendants undertook actions to conceal their unlawful conspiracy; and

(h) The appropriate class-wide measure of any damages.

91.    ***These and other questions of law or fact which are common to the members*** of the Nationwide Class and the State Law Class predominate over any questions affecting only individual members of the Classes.

92.    ***Typicality***. Plaintiffs' claims are typical of the claims of the members of the Nationwide Class and the State Law Class because their claims arise from the same course of conduct by Defendants, and the relief sought within the Nationwide Class and the State Law Class is similar as to each member.

93.    ***Adequacy of Representation***. Plaintiffs will fairly and adequately protect the interests of the Nationwide Class and the State Law Class. Plaintiffs have retained counsel highly experienced in complex litigation including complex antitrust class action litigation, and Plaintiffs intends to vigorously prosecute this action. Plaintiffs have no interest in this action that is adverse or antagonistic to the interests of the Nationwide Class and the State Law Class.

94.    ***Superiority***. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual members of the Nationwide Class and the State Law Class would impose heavy burdens on the Court and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Nationwide Class and the State Law Class. A class action, on the other hand, would achieve substantial economies of

time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. Absent a class action, it would not be practicable for the members of the Nationwide Class and State Law Class to seek redress for the violations of law alleged herein.

95.    Furthermore, the Nationwide Class may be certified under Rule 23(b)(2) because Defendants have acted (and continue to act) on grounds generally applicable to the Nationwide Class, thereby making final injunctive relief appropriate with respect to the Nationwide Class as a whole.

## EQUITABLE TOLLING & FRAUDULENT CONCEALMENT

96.    Any applicable statute of limitations for Plaintiffs' and the Class Members' claims as alleged in this Complaint were tolled by equitable estoppel due to Defendants' concealment of their unlawful actions.

97.    Plaintiffs and Class Members did not have actual or constructive notice of the conspiracy alleged herein until, at the earliest, the DOJ's Findings of Fact in support of its petition to stop the merger of United and Imperial were made public. In particular, the full scope of Defendants' unlawful conduct could not have been discovered until the appellate exhibits from that matter were made available to the public.

98.    The conspiracy alleged herein is inherently self-concealing. Nevertheless, Defendants affirmatively and fraudulently concealed their unlawful, anticompetitive conduct from Plaintiffs and Class Members throughout the Class Period.

99.    Plaintiffs and Class Members all reasonably relied on Defendants' overt assurances to conduct lawful business in an ethical and fair manner, preventing Plaintiffs and Class Members from discovering the unlawful conduct of Defendants.

100.    Defendants ASR Group, Cargill, and United each publish codes of conduct on their websites, assuring their business partners and the public at large that they operate in a lawful and ethical manner.

101.    ASR Group's Code of Ethics and Business Conduct contains a specific section on "Following Antitrust and Competition Laws," which prohibits "[a]greements with competitors to fix or control prices."[56]

102.    Cargill's Code of Conduct indicates that "All employees are expected to follow competition laws, as well as Cargills' own competition policy. Employees must also be careful when interacting with competitors—for instance, in connection with trade associations and benchmarking. Another way of preserving fair and honest competition involves the proper collection and use of competitive intelligence. Gathering competitive information and business data is an appropriate business practice, but it must be done legally and ethically." In addition, Cargill explicitly instructs its employees "Don't: Discuss prices, sales plans or volumes with competitors."[57]

---

[56]    *Code of Ethics and Business Conduct*, ASR GROUP, (Jan. 22, 2020), https://www.asr-group.com/sites/asr_group_com/files/2023-01/ASR%20Group%20-%20Code%20of%20Ethics%20and%20Business%20Conduct%20%282020-01-20%29%20English%20-%20Final%20-%20Website%20%281%29.pdf (last accessed Mar. 28, 2024).

[57]    *Our Guiding Principles: Cargill Code of Conduct*, CARGILL, https://www.cargill.com/doc/1432076403017/guiding-principles-en.pdf (last accessed Mar. 28, 2024).

103.    United's Code of Business Conduct and Ethics states generally that obeying the letter and spirit of the law is the foundation of its ethical business practices. More specifically, United states that "Our employees, officers, directors, agents and other representative must maintain the confidentiality of confidential information entrusted to them by us or our customers, except when disclosure is authorized in writing by a supervisor or required by laws or regulations. Confidential information includes, without limitation, any information that derives independent value because it is not known by third parties, including United Sugar's competitors or the general public, whether or not expressly identified as confidential."[58]

## CLAIMS FOR RELIEF

## I.    VIOLATIONS OF FEDERAL ANTITRUST LAW

### COUNT 1
### VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 1
#### (On Behalf of Members of the Nationwide Class)

104.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

105.    The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace.

---

[58] *Code of Business Conduct and Ethics*, UNITED SUGARS CORP., (Mar. 16, 2020), https://unitedsugarpr.com/wp-content/uploads/2021/04/United-Sugars_-Code-of-Conduct-and-Ethics-Updated-March-2020.pdf.

106. Defendants and their co-conspirators participated in a conspiracy to retrain trade by artificially fixing, raising or stabilizing the price for Granulated Sugar in the United States in violation of Section 1 of the Sherman Act, 15 § U.S.C. 1.

107. From at least January 1, 2019, and continuing through the present date, the exact dates being unknown to Plaintiffs and Class Members, Defendants and their co-conspirators entered into a continuing agreement or understanding to fix, raise, or stabilize the price for Granulated Sugar in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

108. Defendants' anticompetitive acts had a direct, substantial, and foreseeable effect on interstate trade or commerce by causing prices for Granulated Sugar to be higher than they otherwise would have been in a competitive market.

109. As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been harmed in their business or property by paying inflated prices for Granulated Sugar.

110. In formulating and carrying out the alleged agreement or understanding to restrain trade and raise prices, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to acts, practices, and course of conduct set forth in this Complaint. Defendants' conspiracy had the following effects, among others:

(a) Price competition in the sale of Granulated Sugar has been restrained, suppressed, and/or eliminated in the United States;

(b) Prices for Granulated Sugar sold, directly and indirectly, by Defendants and all of their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, noncompetitive levels throughout the United States; and

(c) Those who purchased Granulated Sugar indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition, resulting in artificially high prices paid for Granulated Sugar.

111.    Defendants took all the actions alleged in this Complaint with the knowledge and intended effect that their actions would proximately cause the price of Granulated Sugar to be higher than it would be but for Defendants' conduct.

112.    As a direct and proximate result of Defendants' anticompetitive conduct, Plaintiffs and members of the Class have been injured in their business or property and will continue to be injured in their business and property by paying more for Granulated Sugar than they would have paid and will pay in the absence of the conspiracy.

113.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

## II.    VIOLATIONS OF STATE ANTITRUST, UNFAIR COMPETITION, AND CONSUMER PROTECTION LAWS

114.    Plaintiffs re-allege and incorporate by reference all the allegations in paragraphs 1 through 103 above as if fully set forth herein, in each of the state law counts set forth below on behalf of the State Law Class.

115. During the Class Period, Defendants and their co-conspirators participated in a conspiracy to retrain trade by fixing, stabilizing, or maintaining prices of Granulated Sugar sold in various states and to unreasonably restrain trade and commerce and harm consumers in violation of the various state antitrust and consumer protection laws set forth below.

116. In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of conspiracy, including: agreeing to fix, maintain, or stabilize Granulated Sugar prices, which injured Plaintiffs and members of the State Law Class; exchanging competitively sensitive information between and among Defendants; and participating in meetings conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

117. Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out the conspiracy to fix, maintain, or stabilize Granulated Sugar prices at artificially high levels. As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the State Law Class were deprived of free and open competition and paid more to purchase Granulated Sugar than they otherwise would have in the absence of Defendants' unlawful conduct. This injury is of the type that the antitrust and consumer protection laws of the below states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

118.    In addition, Defendants have profited significantly from the conspiracy. Defendants' profits derived from their anticompetitive conduct and come at the expense of and to the detriment of Plaintiffs and members of the State Law Class.

119.    Accordingly, Plaintiffs and the members of the State Law Class in each of the following jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by each particular jurisdiction's law, injunction (where applicable), and costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws.

120.    Defendants' anticompetitive acts described above were knowing and willful and constitute violations of the following state antitrust, unfair competition, and consumer protection statutes.

## COUNT 2
## VIOLATION OF ALABAMA CODE §§ 6-5-60 *et seq.*
**(On Behalf of Members of the State Law Class Who Purchased Granulated Sugar in Alabama)**

121.    Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Alabama; (2) Granulated Sugar prices in the State of Alabama were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Alabama in violation of Ala. Code §§ 6-5-60 *et seq.* Defendants' conspiracy substantially affected Alabama commerce and accordingly, Plaintiffs and the members of the State Law Class seek all forms of relief available under that statute.

**COUNT 3**
**VIOLATION OF ARIZONA'S UNIFORM STATE ANTITRUST ACT, ARIZ.**
**REV. STAT. §§ 44-1401, *et seq.***
**(On Behalf of Members of the State Law Class That Purchases Granulated Sugar in**
**Arizona)**

122.    Defendants' conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Arizona; (2) prices of Granulated Sugar in the State of Arizona were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

123.    Defendants' agreement was an unlawful agreement to restrain trade in the State of Arizona in violation of Ariz. Rev. Stat. §§ 44-1401 *et seq.* Accordingly, Plaintiffs and members of the State Law Class Class seek all forms of relief available under that statute.

**COUNT 4**
**VIOLATION OF ARIZONA'S CONSUMER FRAUD ACT, ARIZ. REV. STAT. §§**
**44-1521, *et seq.***
**(On Behalf of Members of the State Law Class That Purchases Granulated Sugar in**
**Arizona)**

124.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. Ann. §§ 44-1521 *et seq.*, and, accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 5
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 16700 *et seq.*
## (On Behalf of Members of the State Law Class Who Purchased Granulated Sugar in California)

125.    The California Business & Professions Code generally governs the conduct of corporate entities. The Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770, governs antitrust violations in California.

126.    Defendants' conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout California; (2) Granulated Sugar prices in the State of California were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

127.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Cal. Bus. & Prof. Code §§ 16700 *et seq.* During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce. Each Defendant has acted in violation of Cal. Bus. & Prof. Code § 16720 to fix, reduce, stabilize, and maintain Granulated Sugar production and pricing. The violations of Cal. Bus. & Prof. Code § 16720 consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, reduce, maintain, and stabilize the production of Granulated Sugar. For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which

they combined and conspired to do, including, but not limited to, the acts, practices, and course of conduct set forth above. As a result of Defendants' violation of Cal. Bus. & Prof. Code § 16720, Plaintiffs and members of the State Law Class seek all forms of relief available under the Cartwright Act.

**COUNT 6**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200,** *et seq.*
**(On Behalf of Members of the State Law Class Who Purchased Granulated Sugar in California)**

128.    Defendants' conduct constitutes unlawful and unfair business acts and practices within the meaning of California's Unfair Competition Law, California Business and Professions Code §§ 17200 et. seq. ("UCL")

129.    Defendants' acts or practices are unlawful because they violate, inter alia, the Sherman Antitrust Act and the California Cartwright Act.

130.    Defendants' acts and practices are unfair in that: (i) they are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers; (ii) they harmed and continue to harm consumers in a manner far outweighing any legitimate utility of their conduct; (iii) the injury was not one that consumers reasonably could have avoided; and (iv) they were contrary to legislatively declared and public policy.

131.    Defendants financially benefited from their conduct to the financial detriment of Plaintiffs and Class members.

132.    As a direct and proximate result of Defendants' unlawful and unfair acts and practices, Plaintiffs and Class members suffered substantial injury in fact, and lost money and/or property. The injuries suffered by the Plaintiffs and Class members include, but are

not limited to, paying higher prices for Granulated Sugar than they would have paid in the absence of Defendants' anticompetitive conspiracy.

133. Defendants' conduct is continuing and unless injunctive relief is granted, artificially and anticompetitively inflated Granulated Sugar prices will continue unabated.

134. Defendants thus have engaged in unlawful and unfair business acts and practices in violation of the UCL, Plaintiffs and members of the State Law Class seek all forms of relief available under the UCL.

## COUNT 7
## VIOLATION OF COLORADO'S ANTITRUST ACT, COLO. REV. STAT. §§ 6-4-101 *et seq.*
**(On Behalf of Members of the State Law Class Who Purchased Granulated Sugar in Colorado)**

135. Defendants' conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Colorado; (2) Granulated Sugar prices in the State of Colorado were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers. Defendants' conduct alleged herein was in violation of Colo. Rev. Stat. §§ 6-4-101 *et seq.*, and accordingly Plaintiffs and members of the State Law Class seek all available relief under that statute.

## COUNT 8
## VIOLATION OF COLORADO'S CONSUMER PROTECTION ACT, COLO. REV. STAT. §§ 6-1-101 *et seq.*
**(On Behalf of Members of the State Law Class Who Purchased Granulated Sugar in Colorado)**

136. Defendants have engaged in unfair competition or unfair or deceptive acts or

practices by conspiring to restrain trade in the state of Colorado, in violation of Colo. Rev. Stat. §§ 6-1-101 *et seq.* and, accordingly, Plaintiffs and members of the State Law Class seek all relief available under that statute.

## COUNT 9
## VIOLATION OF CONNECTICUT'S ANTITRUST ACT
**(On Behalf of Members of the State Law Class Who Purchased Granulated Sugar in Connecticut)**

137.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Conn. Gen. Stat. §§ 35-24 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Connecticut, and (2) Granulated Sugar prices in the State of Connecticut were fixed, controlled, and maintained at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Connecticut commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Conn. Gen. Stat. §§ 35-24 *et seq.* Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 10
## VIOLATION OF DISTRICT OF COLUMBIA CODE TIT. 28, CH. 45
**(On Behalf of Members of the State Law Class Who Purchased Granulated Sugar in District of Columbia)**

138.    The policy of District of Columbia Code, Title 28, Chapter 45 (Restraints of Trade) is to "promote the unhampered freedom of commerce and industry throughout the District of Columbia by prohibiting restraints of trade and monopolistic practices."

139.    Defendants' combinations or conspiracies had the following effects: (1) price

competition for Granulated Sugar was restrained, suppressed, and eliminate throughout the District of Columbia; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; and (3) Plaintiffs and members of the State Law Class, including those who resided in the District of Columbia and purchased Granulated Sugar in the District of Columbia, paid supracompetitive, artificially inflated prices for Granulated Sugar. During the Class Period, Defendants' illegal conduct substantially affected commerce in the District of Columbia.

140.    Defendants have entered into agreements in restraint of trade in violation of D.C. Code §§ 28-4501 *et seq*. Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 11
## VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION ACT, D.C. CODE §§ 28-3901 *et seq.*
### (On Behalf of Members of the State Law Class Who Purchased Granulated Sugar in District of Columbia)

141.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices by conspiring to restrain trade in the District of Columbia in violation of D.C. Code, §§ 28-3901 *et seq.,* and, accordingly, Plaintiffs and members of the State Law Class seek all relief available under that statute.

## COUNT 12
## VIOLATION OF FLORIDA FLA. STAT. §§ 542.15 *et seq.*
### (On Behalf of Members of the State Law Class Who Purchased Granulated Sugar in Florida)

142.    Through their actions and actions of co-conspirators, Granulated Sugar prices in the State of Florida were raised, fixed, maintained, and stabilized at artificially

high level, thereby injuring Plaintiffs and the State Law Class. Throughout the Class Period, competition in the Granulated Sugar market was restrained, suppressed, and eliminated throughout Florida. Plaintiffs and members of the State Law Class, including those who purchased Granulated Sugar in the State of Florida, paid supracompetitive, artificially inflated prices for Granulated Sugar. During the Class Period, Defendants' illegal conduct substantially affected commerce in Florida.

143.    Defendants have violated Fla. Stat. §§ 542.15 *et seq.*, through their anticompetitive actions as alleged herein. Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 13
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201 *et seq.*
### (On Behalf of Members of the State Law Class Who Purchased Granulated Sugar in Florida)

144.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices by conspiring to restrain trade in the State of Florida in violation of Fla. Stat. §§ 501.201 *et seq.*, and, accordingly, Plaintiffs and members of the State Law Class seek all relief available under that statute.

## COUNT 14
## VIOLATION OF HAWAII'S ANTITRUST LAW, HAW. REV. STAT. ANN. §§ 480-1 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Hawaii)

145.    Defendants have violated Haw. Rev. Stat. Ann. §§ 480-1 *et seq.*, through their actions. *See* Haw. Rev. Stat. Ann. §§ 480-4, 480-13. Through Defendants' actions and the actions of their co-conspirators, Granulated Sugar prices in the State of Hawaii

were raised, fixed, maintained, and stabilized at artificially high levels, thereby injuring Plaintiffs and the State Law Class. Throughout the Class Period, price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Hawaii. Plaintiffs and members of the State Law Class, including those who resided in the State of Hawaii and purchased Granulated Sugar in Hawaii, paid supracompetitive, artificially inflated prices for their Granulated Sugar. During the Class Period, Defendants' illegal conduct substantially affected commerce in Hawaii. Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under Haw. Rev. Stat. Ann. §§ 480-1 *et seq.*

### COUNT 15
### VIOLATION OF THE ILLINOIS ANTITRUST ACT, 740 ILL. COMP. STAT. ANN. 10/3(1), *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Illinois)

146.   The Illinois Antitrust Act, 740 ILCS 10/1, *et seq.*, aims "to promote the unhampered growth of commerce and industry throughout the State by prohibiting restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade…" 740 ILCS 10/2.

147.   Defendants' combinations or conspiracies had the following effects: (1) price competition in the Granulated Sugar markets was restrained, suppressed, and eliminated throughout the State of Illinois, and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Illinois. During the Class Period, Defendants' illegal conduct substantially affected Illinois

commerce.

148.    Defendants have entered into agreements in restraint of trade in violation of 740 Ill. Comp. Stat. 10/1 *et seq.* Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 16
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILL. COMP. STAT. ANN. 505/1 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Illinois)

149.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices by conspiring to restrain trade in the state of Illinois in violation of 815 Ill. Comp. Stat. 505/1 *et seq*, and 720 Ill. Comp. Stat. 295/1a, and, accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 17
## VIOLATION OF THE IOWA COMPETITION LAW, IOWA CODE §§ 553.1 *et seq*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Iowa)

150.    The Iowa Competition Law aims to "prohibit[] restraint of economic activity and monopolistic practices." Iowa Code § 553.2.

151.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §§ 553.1 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Iowa, and (2) Granulated Sugar prices were raised, fixed, maintained and stabilized at artificially high levels throughout the State of Iowa. During the Class Period, Defendants' illegal conduct substantially affected Iowa

commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1 *et seq.* Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

**COUNT 18**
**VIOLATION OF KANSAS'S RESTRAINT OF TRADE ACT, KAN. STAT. ANN.**
**§§ 50-101 *et seq.***
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar**
**in Kansas)**

152.    The Kansas Restraint of Trade Act aims to prohibit practices which, *inter alia*, "tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state." Kan. Stat. Ann. § 50-112.

153.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Kan. Stat. Ann. §§ 50-101 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Kansas; (2) Granulated Sugar prices in the State of Kansas were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under Kan. Stat. Ann. §§ 50-101 *et seq.*

**COUNT 19**
**VIOLATION OF MAINE'S ANTITRUST STATUTE, ME. STAT. TIT. 10, §§**
**1101, *et seq.***
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar**
**in Maine)**

154.    Part 3 of Title 10 the Maine Revised Statutes generally governs regulation

of trade in Maine. Chapter 201 thereof governs monopolies and profiteering, generally prohibiting contracts in restraint of trade and conspiracies to monopolize trade. Me. Rev. Stat. Ann. Tit. 10, §§ 1101-02.

155.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Me. Stat. Tit. 10, § 1101. Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Maine; and (2) Granulated Sugar prices in the State of Maine were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. Accordingly, Plaintiffs and members of the State Law Class seek all relief available under Me. Stat. Tit. 10, § 1104.

## COUNT 20
## VIOLATION OF THE MARYLAND ANTITRUST ACT, MD. CODE § 11-209(a)
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Maryland)

156.    Defendants' combinations or conspiracies detrimentally affected the price competition in the State of Maryland for Granulated Sugar by restraining, suppressing, and eliminating competition. Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Granulated Sugar prices in the State of Maryland at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected Maryland commerce as prohibited under Md. Code. §§ 11-209(a) *et seq*. Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 21
## VIOLATION OF THE MICHIGAN ANTITRUST REFORM ACT, MICH. COMP. LAWS §§ 445.771 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Michigan)

157.    Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Michigan, and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Michigan. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

158.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws §§ 445.771 *et seq.* Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 22
## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT, MICH. COMP. LAWS §§ 445.903 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Michigan)

159.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices by conspiring to restrain trade in the state of Michigan in violation of Mich. Comp. Laws §§ 445.903 *et seq.*, and, accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 23
## VIOLATION OF MINNESOTA'S ANTITRUST LAW, MINN. STAT. §§ 325D.49 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Minnesota)

160.    Through their actions and actions of co-conspirators, Granulated Sugar prices in the State of Minnesota were raised, fixed, maintained, and stabilized at an artificially high level, thereby injuring Plaintiffs and the State Law Class.  Throughout the Class Period, price competition in the markets for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Minnesota. Plaintiffs and members of the State Law Class, including those who resided in the State of Minnesota and purchased Granulated Sugar there, paid supracompetitive, artificially inflated prices for Granulated Sugar.  During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Minnesota.

161.    Defendants have violated the Minn. Stat. §§ 325D.49 *et seq.*, through their anticompetitive actions.  Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under Minn. Stat. §§ 325D.49 *et seq.*

## COUNT 24
## VIOLATION OF MINNESOTA'S DECEPTIVE TRADE PRACTICES ACT, MINN. STAT. §§ 325D.43 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Minnesota)

162.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices by conspiring to restrain trade in the state of Minnesota in violation Minn. Stat. §§ 325d.43-48 *et seq.*, and, accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 25
## VIOLATION OF MISSISSIPPI'S ANTITRUST LAW, MISS. CODE ANN. §§ 75-21-1 *et seq*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Mississippi)

163.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Miss. Code Ann. §§ 75-21-1 *et seq. See* Miss. Code Ann. § 75-57-63. Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Mississippi, and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Mississippi. During the Class Period, Defendants' illegal conduct substantially affected the State of Mississippi commerce. Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under Miss. Code Ann. §§ 75-21-1 *et seq.*, and Miss. Code Ann. § 75-57-63.

## COUNT 26
## VIOLATION OF NEBRASKA JUNKIN ACT, NEB. REV. STAT. §§ 59-801, *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Nebraska)

164.    Chapter 59 of the Nebraska Revised Statute generally governs business and trade practices. Sections 801 through 831 thereof, known as the Junkin Act, prohibit antitrust violations such as restraints of trade and monopolization.

165.    Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Nebraska, and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Nebraska.

During the Class Period, Defendants' illegal conduct substantially affected the State of Nebraska commerce.

166.   Defendants restrained trade and commerce in the State of Nebraska by entering into an unlawful agreement in violation of Neb. Rev. Stat. §§ 59-801 *et seq.* Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under Neb. Rev. Stat. §§ 59-801 *et seq.*

**COUNT 27**
**VIOLATION OF THE NEBRASKA DECEPTIVE TRADE PRACTICES ACT,**
**NEB. REV. STAT. §§ 59-1601, *et seq.***
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Nebraska)**

167.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices by conspiring to restrain trade in the state of Nebraska in violation of Neb. Rev. Stat. §§ 59-1601 *et seq.*, and, accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

**COUNT 28**
**VIOLATION OF THE NEVADA UNFAIR TRADE PRACTICES ACT, NEV.**
**REV. STAT. §§ 598A, *et seq.***
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Nevada)**

168.   Defendants' conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Nevada; (2) Granulated Sugar prices in the State of Nevada were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition.

169.    Defendants violated the Nev. Rev. Stat. Ann. §§ 598A.210 *et seq.*, by entering into unlawful agreement in restraint of trade in the State of Nevada. As a result of Defendants' violation of Nev. Rev. Stat. Ann. §§ 598A.210 *et seq.* Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

**COUNT 29**
**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT, NEV. REV. STAT. §§ 598.0903,** *et seq.*
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Nevada)**

170.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices by conspiring to restrain trade in the state of Nevada in violation of Nev. Rev. Stat. Ann. §§ 598.0903 *et seq.*, and, accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

**COUNT 30**
**VIOLATION OF NEW HAMPSHIRE'S ANTITRUST LAW, N.H. REV. STAT. ANN. §§ 356:1** *et seq.*
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar in New Hampshire)**

171.    Defendants' combinations or conspiracies detrimentally affected the price competition in the State of New Hampshire Granulated Sugar market by restraining, suppressing, and eliminating competition.  Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Granulated Sugar prices in the State of New Hampshire at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected the State of New Hampshire commerce.

172.    Defendants have entered into an unlawful agreement in restraint of trade  in violation of N.H. Rev. Stat. Ann. §§ 356:1 *et seq.*  Accordingly, Plaintiffs and

members of the State Law Class seek all forms of relief available under that statute.

## COUNT 31
## VIOLATION OF NEW HAMPSHIRE CONSUMER PROTECTION ACT, N.H. REV. STAT. ANN. §§ 358-A:1 *et seq.*
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar in New Hampshire)**

173.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. §§ 358-A:1 *et seq.*, and, accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 32
## VIOLATION OF NEW MEXICO'S ANTITRUST LAW, N.M. Stat. Ann. §§ 57-1-1 *et seq.*
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar in New Mexico)**

174.    Defendants' combinations or conspiracies detrimentally affected the price competition in the State of New Mexico for Granulated Sugar by restraining, suppressing, and eliminating competition. Further, Defendants' unlawful conduct raised, fixed, maintained and stabilized Granulated Sugar prices in the State of New Mexico at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of New Mexico.

175.    Defendants violated the N.M. Stat. Ann. §§ 57-1-1 *et seq.*, by entering into unlawful agreement in restraint of trade in the State of New Mexico. Accordingly, Plaintiffs and Members of the State Law Class seek all forms of relief available under that statute.

**COUNT 33**
**VIOLATION OF NEW MEXICO'S UNFAIR PRACTICES ACT, N.M. STAT.**
**ANN. §§ 57-12-1 *et seq.***
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar**
**in New Mexico)**

176.    Defendants have engaged in unfair competition or unfair or deceptive acts

or practices by conspiring to restrain trade in the state of New Mexico in violation of N.M.

Stat. Ann. §§ 57-12-1 *et seq.*, and, accordingly, Plaintiffs and members of the State Law

Class seek all forms of relief available under that statute.

**COUNT 34**
**VIOLATION OF NEW YORK'S DONNELLY ACT, N.Y. GEN. BUS. LAW §§ 340**
***et seq.***
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar**
**in New York)**

177.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of N.Y. Gen. Bus. Law §§ 340 *et seq.* Defendants' combinations or conspiracies

had the following effects: (1) price competition in the markets for Granulated Sugar was

restrained, suppressed, and eliminated throughout the State of New York, and (2)

Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high

levels throughout the State of New York. During the Class Period, Defendants' illegal

conduct substantially affected the State of New York commerce. The conduct set forth

above is a *per se* violation of the Donnelly Act, N.Y. Gen. Bus. Law §§ 340 *et seq.*

Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief

available under that statute.

**COUNT 35**
**VIOLATION OF NORTH CAROLINA UNFAIR TRADE AND BUSINESS**
**PRACTICES ACT, N.C. GEN. STAT. §§ 75-1, *et seq.***
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar**
**in North Carolina)**

178.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of N.C. Gen. Stat. §§ 75-1 *et seq.* Defendants' combinations or conspiracies had

the following effects: (1) price competition in the markets for Granulated Sugar was

restrained, suppressed, and eliminated throughout the State of North Carolina, and (2)

Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high

levels throughout the State of North Carolina. During the Class Period, Defendants' illegal

conduct substantially affected the State of North Carolina commerce. Accordingly,

Plaintiffs and members of the State Law Class seek all forms of relief available under N.C.

Gen. Stat. §§ 75-1 *et seq.*

**COUNT 36**
**VIOLATION OF THE NORTH DAKOTA UNFAIR TRADE PRACTICES LAW,**
**N.D. CENT. CODE §§ 51-10, *et seq.***
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar**
**in North Dakota)**

179.    Defendants' actions have violated the N.D. Cent. Code §§ 51-08.1-01 *et seq.*

through their anticompetitive actions. Through their actions and actions of co-

conspirators, Granulated Sugar prices in the State of North Dakota were raised, fixed,

maintained, and stabilized at artificially high level, thereby injuring Plaintiffs and the State

Law Class. Throughout the Class Period, price competition in the markets for Granulated

Sugar was restrained, suppressed, and eliminated throughout the State of North Dakota.

Plaintiffs and members of the State Law Class, including those who resided in the State

of North Dakota and purchased Granulated Sugar there, paid supracompetitive, artificially inflated prices. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of North Dakota. Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under N.D. Cent. Code §§ 51-08.1-01 *et seq.*

## COUNT 37
## VIOLATION OF OREGON'S ANTITRUST LAW, OR. REV. STAT. §§ 646.725
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Oregon)**

180.   Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Oregon; (2) Granulated Sugar prices in the State of Oregon were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected the State of Oregon commerce.

181.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Or. Rev. Stat. §§ 646.725 *et seq.* Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 38
## VIOLATION OF OREGON'S UNLAWFUL TRADE PRACTICES ACT, OR. REV. STAT. §§ 646.605 *et seq.*
**(On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Oregon)**

182.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices by conspiring to restrain trade in the state of Oregon in violation of Or. Rev. Stat. §§ 646.605 *et seq.*, and, accordingly, Plaintiffs and members of the State Law Class

seek all forms of relief available under that statute.

## COUNT 39
## VIOLATION OF RHODE ISLAND'S ANTITRUST LAW, R.I. GEN. LAWS §§ 6-36-7 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Rhode Island)

183.    Defendants' combinations or conspiracies detrimentally affected price competition in the Granulated Sugar markets in the State of Rhode Island by restraining, suppressing, and eliminating competition. Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Granulated Sugar prices in the State of Rhode Island at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Rhode Island.

184.    Defendants have entered into an unlawful agreement in restraint of trade in violation of R.I. Gen. Laws §§ 6-36-7 *et seq.* Accordingly, Plaintiffs and Members of the State Law Class seek all forms of relief available under that statute.

## COUNT 40
## VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT, R.I. GEN. LAWS § 6-13.1-1
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Rhode Island)

185.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices by conspiring to restrain trade in the state of Rhode Island in violation of R.I. Gen. Laws § 6-13.1-1, and, accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNTS 41
## VIOLATION OF SOUTH DAKOTA'S ANTITRUST LAW, S.D. COD. LAWS §§ 37-1-3.1 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in South Dakota)

186.   Through their actions and actions of co-conspirators, Granulated Sugar prices in the State of South Dakota were raised, fixed, maintained, and stabilized at artificially high level, thereby injuring Plaintiffs and the State Law Class. Throughout the Class Period, price competition in the markets for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of South Dakota. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of South Dakota. Plaintiffs and members of the State Law Class, including those who resided in the State of South Dakota and purchased Granulated Sugar there, paid supracompetitive, artificially inflated prices for their Granulated Sugar.

187.   Defendants have violated S.D. Codified Laws §§ 37-1-3.1 *et seq.*, through their anticompetitive actions. Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNTS 42
## VIOLATION OF SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT, S.D. COD. LAWS §§ 37-24-1 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in South Dakota)

188.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices by restraining trade in the state of South Dakota in violation of S.D. Codified Laws §§ 37-24-1 *et seq.*, and, accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under that statute.

## COUNT 43
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT, TENN. CODE ANN. §§ 47-25-101 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Tennessee)

189.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Tenn. Code Ann. §§ 47-25-101 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition for the sale of Granulated Sugar, a tangible good, was restrained, suppressed, and eliminated throughout the State of Tennessee; (2) prices for Granulated Sugar, a tangible good, in the State of Tennessee were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Tennessee. Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under Tenn. Code Ann. §§ 47-25-101 *et seq.*

## COUNT 44
## VIOLATION OF THE UTAH ANTITRUST ACT, UTAH CODE ANN. §§ 76-10-3101 *et seq.*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Utah)

190.   Defendants violated the Utah Code Ann. §§ 76-10-3101 *et seq.* by entering into unlawful agreement in restraint of trade in the State of Utah. Specifically, Defendants' combinations or conspiracies detrimentally affected price competition in the Granulated Sugar markets in the State of Utah by restraining, suppressing, and eliminating competition. Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Granulated Sugar prices in Utah at artificially high levels. During the Class

Period, Defendants' illegal conduct substantially affected commerce in the State of Utah. Accordingly, Plaintiffs and Members of the State Law Class seek all forms of relief available under Utah Code Ann. §§ 76-10-3101 *et seq.*

### COUNT 45
### VIOLATION OF THE VERMONT CONSUMER FRAUD ACT, 9 V.S.A. §§ 2453 *et seq*
### (On behalf of Members of the State Law Class Who Purchased Granulated Sugar in Vermont)

191.    Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Vermont; (2) Granulated Sugar prices in the State of Vermont were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants have entered into an unlawful agreement in restraint of trade in violation of Vt. Stat. Ann. Tit. 9, §§ 2453 *et seq.* During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Vermont. Accordingly, Plaintiffs and members of the State Law Class seek all forms of relief available under Vt. Stat. Ann. Tit. 9, §§ 2465 *et seq.*

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, request relief and pray for judgment against Defendant as follows:

A.    An Order certifying the Classes under the appropriate provisions of Rule 23 (b)(2) and (b)(3) of the Federal Rule of Civil Procedure;

B.    An Order appointing Plaintiffs as Class representatives and appointing their counsel as Class Counsel for the Classes;

C.      For a judgment finding that Defendants' conspiracy to restrain trade by fixing, raising or stabilizing the prices of Granulated Sugar violates the Sherman Act and state antitrust and consumer protection laws as alleged herein;

D.      An award to Plaintiffs and the Class Members for actual damages (including trebling or increases in accordance with the law) in an amount to be determined at trial for all claims alleged herein under which damages are available;

E.      An award to Plaintiffs and the Class Members of restitution in an amount to be determined at trial for all claims alleged herein under which damages are available;

F.      A permanent injunction under, *inter alia,* Section 16 of the Clayton Act, and all claims alleged herein under which injunctive relief is available enjoining Defendants from engaging in any conduct deemed to be unlawful;

G.      An award to Plaintiffs and the Classes of pre- and post-judgment interest as warranted;

H.      An award to Plaintiffs and the Classes for their costs of suit, including reasonable attorneys' fees and expenses; and

I.      An award of such other relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED: May 17, 2024                    **PEARSON WARSHAW, LLP**


By:  _____*/s/ Melissa Weiner*_____
                    Melissa Weiner

Melissa Weiner (#387900)
Brian S. Pafundi (#0392405)
PEARSON WARSHAW, LLP
328 Barry Ave. South, Suite 200
Wayzata, MN 55391
T: (612) 389-0600
F: (612) 389-0610
mweiner@pwfirm.com
bpafundi@pwfirm.com

Daniel L. Warshaw (*Pro Hac Vice* forthcoming)
Bobby Pouya (*Pro Hac Vice* forthcoming)
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
T: (818) 788-8300
F: (818) 788-8104
dwarshaw@pwfirm.com
bpouya@pwfirm.com

Jill Manning (*Pro Hac Vice* forthcoming)
PEARSON WARSHAW, LLP
555 Montgomery St., Suite 1205
San Francisco, CA 94111
T: (415) 433-9000
F: (415) 433-9008
jmanning@pwfirm.com

**Attorneys for Plaintiffs and the Proposed Classes**